IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## STATE OF TENNESSEE v. LOUIS STILL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 14-01374     Glenn Wright, Judge**

---

**No. W2014-01584-CCA-R3-CD  -  Filed September 9, 2015**

---

A Shelby County Criminal Court Jury convicted the appellant, Louis Still, of operating a motor vehicle after having been declared a motor vehicle habitual offender, a Class E felony, and the trial court sentenced him to four years to be served as one month in confinement and the remainder on supervised probation. On appeal, the appellant contends that the evidence is insufficient to support the conviction because the State's key witness, the arresting officer, was not credible. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Louis Still.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carla Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant's trial was held on May 12 and 13, 2014. Officer Ryan Orr of the Memphis Police Department testified that on the evening of December 9, 2013, he was on routine patrol in the area of Shelby Drive and Tulane Road and saw a white Ford Escort westbound on Shelby. The car turned into a BP gas station parking lot and pulled

into a handicap parking space, the only one in the lot, in front of the store. Officer Orr said that he saw the driver, who was the appellant, get out of the Escort and go into the store. Officer Orr stated that he was about one hundred feet away from the Escort and that he did not see anyone else get out of the car.

Officer Orr testified that he pulled into the parking lot, got out of his patrol car, and walked to the front of the Escort. The car's windows were not tinted, and Officer Orr could see into the car clearly. A handicap placard was not in the Escort, and no one was inside the vehicle. Officer Orr said the appellant was in the store for a couple of minutes. When the appellant came outside, the officer confronted him and asked if he was handicapped and knew he was parked in a handicap space. The appellant answered both questions in the negative, so Officer Orr asked him for his driver's license and insurance information, which was normal procedure. The appellant could not provide insurance information and did not have his driver's license "on him." He gave Officer Orr his social security number, and Officer Orr used the number to run a computer check of the appellant's license. The check revealed that the appellant's license had been revoked. Officer Orr said that he arrested the appellant and that the appellant asked if the officer could give him a citation instead of making the arrest. Officer Orr refused to issue a citation, had the Escort towed to the Traffic Bureau, and had another officer transport the appellant to the Traffic Bureau.

On cross-examination, Officer Orr testified that the incident occurred about 7:00 p.m., and he acknowledged that it was dark outside. Officer Orr said that prior to seeing the Escort, he had been traveling south on Tulane Road. As he approached the intersection with Shelby Drive, he saw the Escort traveling west on Shelby. The Escort was "coming toward" Officer Orr but did not pass in front of him and turned left into the BP parking lot. No one was in the car with the appellant. Officer Orr acknowledged that when he confronted the appellant, the appellant was walking toward the driver's side of the Escort. Officer Orr patted down the appellant but did not remember if the appellant had the Escort's keys on his person. Officer Orr said that he called for "backup," that his partner arrived less than one minute later, and that his partner also spoke with the appellant. Officer Orr acknowledged that a bus stop was nearby but said that he did not see anyone at the stop.

Officer Orr testified that he was alone when he saw the Escort and that he filled out the appellant's "arrest ticket" about thirty minutes later. He also acknowledged that he wrote the following on the ticket:

> While on routine patrol officers R. Orr, 12497 and B. Huff,
> 12578, observed vehicle Ford Escort traveling westbound on
> Shelby Drive. Officers observed the vehicle turn south into

the parking lot at 639 East Shelby Drive at the BP Gas Station. Officers observed the vehicle pull into a handicap parking spot. And the officers observed [that the Escort] did not have a handicap placard hanging from the rearview mirror or a handicap emblem on the license plate. [O]fficers stopped the vehicle and confronted the driver defendant Still. Officers asked the defendant if he was handicapped and he stated no, I am not. Officers checked the defendant's information with Station B and [were] advised that he is a revoked habitual for having been an habitual issued on 10/4/2005. Officers asked the defendant for his insurance and [he] stated that he could not provide officers with insurance. Officers placed defendant into custody.

Officer Orr maintained that despite his repeated use of the word "officers," Officer Huff was not present. However, Officer Huff was present when Officer Orr filled out the arrest ticket.

On redirect examination, Officer Orr testified that he had written hundreds of arrest tickets during his career. He said his use of "officers" was "habit" because other officers commonly arrived at crime scenes for backup.

At the conclusion of Officer Orr's testimony, the parties stipulated that the appellant had been declared a motor vehicle habitual offender on October 4, 2005. The State rested its case.

Constance Townes testified for the appellant that he was a good friend of her family and lived in her neighborhood. On December 9, 2013, the appellant's wife, Rita, telephoned Townes and asked Townes to drive Rita's Escort "around the corner" to have the Escort "checked out" by a mechanic. Townes walked down the street to the appellant's house. Townes got into the driver's seat of the Escort, and the appellant got into the passenger side. Townes said that she drove the car to the mechanic and that she and the appellant were there about one hour. Townes then drove to the BP on Shelby Drive and pulled into a handicap space because "the car had quit." Townes got out of the driver's seat and was going to walk to get the mechanic while the appellant stayed with the car. Townes saw some friends, and they drove her to the mechanic. When Townes later returned to the BP station, the appellant and the car were gone. She said the appellant did not drive the car on December 9.

On cross-examination, Townes testified that she did not know what time Rita telephoned her. She said that when she and the appellant got to the BP station, it was still

light outside. Upon being questioned by the trial court, Townes acknowledged that the Escort's keys were in her pocket when she left the BP station.

Joseph Lockhart testified that he and the appellant were "old acquaintance[s]." On December 9, 2013, Lockhart was standing at the bus stop near the BP station and saw "some young lady" driving a car. Lockhart did not know the woman. He said that "they [were] having a problem with the car" and that the woman pulled up to the area where Lockhart was standing. The woman got out of the car and left. Lockhart spoke with the appellant, and the appellant went into the store. When the appellant came out of the store, Lockhart was on the bus. Upon being questioned by the trial court, Lockhart testified that he did not see a police car pull into the parking lot. He said it was still daylight outside when the incident occurred.

The jury convicted the appellant as charged of operating a motor vehicle after having been declared a motor vehicle habitual offender, a Class E felony. After a sentencing hearing, the trial court sentenced him to four years to be served as one month in confinement and the remainder on supervised probation.

## II. Analysis

The appellant contends that the evidence is insufficient to support his conviction because Officer Orr was not credible. In support of his argument, he notes that Officer Orr's testimony was inconsistent with the officer's narrative on the arrest ticket and that the State did not have Officer Huff testify. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle,

639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Taken in the light most favorable to the State, the evidence shows that on the evening of December 9, 2013, Officer Orr saw the appellant drive the Escort, park the car in a handicap space at the BP station, and go into the store. When Officer Orr checked the appellant's driver's license, he learned that the appellant had been declared a motor vehicle habitual offender. Defense counsel thoroughly cross-examined Officer Orr, and the officer acknowledged that his testimony contradicted the information on the appellant's arrest ticket. Specifically, Officer Orr wrote on the ticket that another officer was with him when he first saw the appellant driving the Escort and when he confronted the appellant. However, Officer Orr explained that he commonly wrote "officers" on arrest tickets out of habit and that another officer was not present. The jury, as was its prerogative, chose to accredit the officer's testimony that he saw the appellant driving the Escort. Therefore, the evidence is sufficient to support the conviction.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE